## DUKES v. BAUERLE et al.

*(Circuit Court, N. D. Illinois. February 24, 1890.)*

1. PATENTS FOR INVENTIONS—ORNAMENTS—DUPLICITY—SEWING-MACHINE COVERS.

Rev. St. U. S. § 4929, provides that any person * * * who has invented and produced "any new and original * * * ornament or pattern, * * * placed on, or worked into, any article of manufacture," may obtain a patent therefor as provided in the case of inventions or discoveries. The claim of design patent No. 16,039, granted April 14, 1885, to Nicholas A. Hull, is for "a design for a sewing-machine case, consisting of. the raised panel, A, divided into a series of smaller panels, *a*, the main panel, B, and fluted or beaded corners, *c*;" the panels described being on the front of the case, and the beaded corners at right angles to the base of the case. *Held*, that the claim covers two distinct and separate ornaments,—the panels and the corners,—and the patent is therefore void.

2. SAME.

The first claim of design patent No. 16,040, granted April 14, 1885, to Nicholas A. Hull, is for "the design for the ornamentation of sewing-machine cases, * * * consisting of the Gothic top, D, having a series of beads, *f*, and fringed rail, *c*." The third claim is for the same elements together with "the panel, *c*, surrounded by the beaded border, *a*," on the front of the case. *Held*, that the first claim is for two separate and distinct ornaments, the Gothic top and the fringed rail, and the third includes both of these, and also the panels; and therefore the patent is void.

3. SAME—NOVELTY—DESIGN FOR SEWING-MACHINE CASES.

Both of the foregoing claims of patent No. 16,040, as well as the claims for the central raised panel and border of that patent and of No. 16,039, are void for want of novelty.

In Equity.

*John G. Elliott*, for complainant.

*Taylor E. Brown*, for defendants.

BLODGETT, J. This is a bill charging defendants with the infringement of patent No. 16,039, granted April 14, 1885, to Nicholas A. Hull, for "a design for a sewing-machine case," duly assigned to complainant, and patent No. 16,040, granted at the same date to Nicholas A. Hull, for a "design for a sewing-machine case" and duly assigned to complainant; each patent being for the term of three and one-half years. Patent No. 16,039 describes the design as follows:

"The front portion of this case has a raised panel,—raised from the main panel. This raised panel is divided into a series of smaller panels, by a system of angular cuts or grooves extending at right angles, and spaced to suit such transfer or ornament as seem desirable to put on the same; each panel being beveled on all sides by the angular cuts or grooves."

The case has fluted or beaded corners,—said flutes or beads extending vertically, or at right angles with the base of the case; and the claim is:

"A design for a sewing-machine case consisting of the raised panel, A, divided into a series of smaller panels, *a*, the main panel, B, and fluted or beaded corners, *c*, as shown and described."

The second patent, No. 16,040, describes the design as consisting of a front and main panel to a sewing-machine case and a raised center panel; the center panel being surrounded by a border consisting of a series of beads and grooves, forming a convex and concave border, being separated from the center panel by a bevel cut, which is deeper than the concave

cut in the border. This border crosses at the corners, and forms around the panel eight distinct and smaller panels, the center panel being beveled on the edges; the bevels on the center panel and border panels extending on a straight line, and parallel with each other. The case above the main panel has a fringed rail; the fringe being cut entirely across the edge of the rail. The case has rounded corners, with transverse raised beads in center and at both ends thereof, and has a Gothic top, moulded, with a series of beads in center and large concave on each side, * * * all running parallel with the top of the case; and the claims are:

"(1) The design for the ornamentation of sewing-machine cases; the same consisting of the Gothic top, D, having a series of beads, $f$, and fringed rail, $c$, as shown and described. (2) The design for the ornamentation of sewing-machine cases; the same consisting of the main panel, B, comprising the center panel, $o$, surrounded by the border, $a$, formed of a series of beads crossing each other at the corners, as shown and described. (3) The design for the ornamentation of sewing-machine cases; the same consisting of the Gothic top, D, having a series of beads, $f$, and fringed rail, $c$, and the panel, C, surrounded by the beaded border, $a$, as shown and described."

The defenses interposed are (1) that the patents are each of them void for want of novelty; (2) that defendants do not infringe; (3) that both these patents are void, except as to the second claim of No. 16,040, because all the other claims are for more than one ornament.

It may, I think, be said that, these patents having been applied for by the same person, and having been issued on the same day, each qualifies and limits the other; that is, that what is found in No. 16,039 which is also found in No. 16,040 must be considered as belonging to No. 16,039 and to qualify whatever there is of the same character in No. 16,040. Defendants admit that they made and sold in August, 1886, a small number of sewing-machine covers like those shown in No. 16,040, but say that, on being notified that they were infringing complainant's patent, they stopped making such covers; and the proof, I think, supports this allegation. This must be taken as an admission by defendants of liability to some extent for infringement of patent No. 16,040, if such patent is valid. Defendants also admit that, since they abandoned the manufacture of sewing-machine covers like those described in patent No. 16,040, they have manufactured sewing-machine covers substantially like complainant's Exhibits A, B, and C.

Section 4929 of the Revised Statutes, under which these patents were granted, reads as follows:

"Any person who, by his own industry, genius, efforts, and expense, has invented and produced any new and original design for a manufacture, bust, statue, alto-relievo, or bass-relief; any new and original design for the printing of woolen, silk, cotton, or other fabrics; any new and original impression, ornament, patent, print, or picture to be printed, painted, cast, or otherwise placed on or worked into any article of manufacture; or any new, useful, and original shape or configuration of any article of manufacture, the same not having been known or used by others before his invention or production thereof, or patented or described in any printed publication, may, upon payment of the fee prescribed, and other due proceedings had, the same as in cases of inventions or discoveries, obtain a patent therefor."

It will be seen that this statute authorizes the issue of design patents, of several different descriptions. (1) For any new and original design for a manufacture, bust, etc.; (2) for any new and original design for the printing of woolen, silk, cotton, or other fabrics; (3) for any new and original impression, ornament, pattern, print, or picture, to be printed, cast, or otherwise placed on or worked into any article of manufacture; (4) for any new or original shape or configuration of any article of manufacture. As to patent No. 16,039, the patentee says in his specifications that he has originated and invented "a new and useful design for a sewing-machine case," and that the photograph attached to the patent shows a view in perspective of a sewing-machine provided with a case constructed according to his design. This language would naturally seem to imply that the design was for an entire sewing-machine case, but an examination of the specifications in full shows that the design is only for a portion of the case, and does not cover the sewing-machine case as an article of manufacture or the shape or configuration of the case, but only the front panel and corner, so that this design is really for the ornamentation of a sewing-machine cover, and not for the entire cover or case. The specification describes the main panel of the front of a sewing-machine cover, with a raised panel in the center, and this raised panel is divided into a series of smaller panels by beads and grooves, and also the fluting or beading of the corners of such case by vertical beads or flutings; and the claim is for a design for a sewing-machine case consisting of this large panel, with the raised center panel divided into a series of smaller panels and the fluted or beaded corners. As I construe this patent, the claim is for (1) a front main panel, from the central part of which the raised panel rises; (2) a central raised panel divided into a series of smaller panels by a system of angular grooves at right angles to each other, these angular grooves making each of these smaller panels more or less beveled, according to the obtuseness of the angular grooves; (3) the fluted or beaded corners; the fluting or beading being vertical, or at right angles to the base of the case. The question then arises, is not this a design for two ornaments instead of one; that is, a design for the front panel of a sewing-machine cover, with a raised panel divided into a series of beveled subpanels, and a design for an ornament to the corners of the sewing-machine case by vertical flutings or beadings? The two devices have no necessary relation or connection with each other. Each is complete by itself, and neither is necessary to the other, so that, it seems to me; we have a patent for two separate ornaments. The statute gives a patent for an "ornament" to be placed on or worked into any article of manufacture, and an "ornament" may be composed of more than one figure, but the figures or lines must all be necessary to make the one ornament; that is, more than one figure or combination of lines may be grouped together to make one ornament, but one claim cannot cover several figures or ornaments which stand in no way related to each other. This panel front and beaded corner are not parts of one single ornament, but each is an independent ornament; neither in any way relying for its effect upon the other. It is true that the case intended to be ornamented

may present a more pleasing and attractive appearance by having both these ornaments upon it, and it may be more ornamented thereby; but they are separate ornaments, and not parts of one ornament. It is probable that a design patent may have different claims for different ornaments to be placed on the same manufactured article, but I am quite clear that a single claim cannot cover several ornaments in no way depending upon each other. It would be like joining in a single claim in a mechanical patent two different machines, having nothing to do with each other. It would not be a valid patent for the two, because they do not belong together; and it would not be a valid patent for one of them, because it would be impossible to tell which of them the patent-office or the inventor intended should be protected or covered by the patent. It is like multifariousness in pleading; the two unrelated subjects neutralizing and defeating each other. In *Simpson* v. *Davis*, 12 Fed. Rep. 144, the court said:

"The difficulty with the claim does not arise from want of novelty in the forms employed, nor yet in the want of novelty in the method of arranging these forms, because, simple as the arrangement is, the case furnishes no evidence that a scroll and roses were ever before arranged one above another, with only a bead between; but I find it difficult to consider that the scroll, roses, and bead, when arranged as described in the claim, constitute a single ornament. There is no commingling of the lines forming the scroll, the bead, and the roses. No new idea seems to be embodied in the method of their arrangement. All that has been done is to place these distinct and well-known ornaments one above the other, without the production of any such combined effect as to entitle the whole to be treat as a new and original ornament. No new ornament has in fact been produced."

So here we have two separate ornaments, each acting by itself in the ornamentation of the case, but neither of them depending for its effect upon the other. There is no grouping of the two ornaments together so as to make them practically one ornament. I am, therefore, of opinion that patent No. 16,039 is void, and gives no right of action to the complainant. But, if I err in holding this patent void for the reasons assigned, I am still of opinion that complainant has no right to a decree, upon the ground of invalidity of the patent for want of novelty and non-infringement, for reasons which will be hereafter given in considering the other patent.

Patent No. 16,040, shows a sewing-machine case, the front of which consists of a main panel, in the center of which is a raised panel with beveled edges; and around this central raised panel is a series of beads and grooves which cross each other at the corners, and form around the central raised panel eight smaller panels. Above the main panel is a fringed or notched rail extending the length of the panel. What is called in the specifications the "Gothic top" or roof of the cover has a series of beads running its entire length in the center, and concave cuts both above and below these beads, and parallel to the beads. The first claim of this patent is for the ornamentation of the sewing-machine case by a Gothic top, with a series of beads and the fringed rail; this fringed rail occupying, substantially, the place of the frieze in the cornices of ordinary

wooden houses. The third claim is for the ornamentation of a sewing-machine case or cover by the Gothic top, having a series of beads, the fringed rail, and the raised panel, surrounded by the beaded border, as shown. What I have said in regard to the single claim of the preceding patent, No. 16,039, applies with equal force to both these claims; that is, they are for more than one ornament, instead of for a single ornament,—the first claim being for the Gothic top and the fringed rail, each being separate ornaments, and the third claim being for the Gothic top, the fringed rail, and the raised panel, all of which are separate ornaments.

This brings me to consider the second claim, which is for the panel with the center panel surrounded by a beaded border, as described,—this claim being simply for an ornamented panel; the ornamenting consisting merely in the raised center panel, and the beaded border around it. Panels with raised centers are old. We see them—in the doors and wainscoting of our dwelling-houses, in the furniture of our homes, and in railroad cars—almost everywhere we go. So, too, the beading of panels is old. The desk and doors of this court-room show panels with raised centers and beads upon and around the panels. The proof also shows sewing-machine covers with a center panel surrounded by grooves, it is true, somewhat deeper, and somewhat different in their configuration, from those described in the complainant's patent; but, at the same time, it is a grooved and beaded border which divides the main panel into several smaller panels. I refer to the exhibit described as the "Carey-Howe" cover. So, too, patent No. 16,039 is for a panel with a raised center, and this raised center panel surrounded by beads and groovings; and what possible invention is there in producing this form of ornamentation, after the production of the panel shown in patent No. 16,039? It is true there is some slight difference in the shape of the grooves and beads, but not such a change as to require invention. There is also an exhibit in the case of a "Remington cover" which shows a main panel with the central part raised, and grooves and beading surrounding the main panel. This construction or design is much older, as the proof shows, than the complainant's patent; and I think it may be properly asked, what invention can there be in running a grooved and beaded border around the central raised panel, when it has been done before around the main panel? The proof also shows the use of grooves and beadings around the central raised panels in what are described in the proof as the "Chapman bureau" and the "elevator cab" panels. These two last forms of construction are not set out and alleged as anticipations in the answer, but may, I think, with propriety, be referred to as showing the state of the art at and for a long time before this inventor entered the field, if such proof is necessary, and not a part of our common knowledge. With this proof before us, I think neither of the claims of this patent can be sustained as novel and original, because there is nothing but a mere change of location, to say the least, of groovings and beadings, which have been known for many years, and in common, every-day use, as shown by the circulars and exhibits in evidence in this case, to such an extent that, it seems to me, the changes shown

in this patent from the older art could not have required anything like inventive talent or genius. The mere change of location of grooves and beadings, when once they have been adopted as a mode of ornamentation for this class of manufactures, from the outer border of the main panel to the outer border of the central raised panel, seems to me the work of a mere mechanic, and not invention, or the work of genius. The Remington cover, to which I have referred, shows also a Gothic top with beads and grooves and concave cuts running lengthwise, which, while not exactly like those described in the patent, seem to me sufficient to be an anticipation of it. It also shows a fringed rail below the corners, as well as the center panel and grooves, to which I have referred in considering the validity of the second claim; and, with this form of ornamentation in the art, I cannot see any novelty in the Gothic top and fringed rail, and main and central raised panels, of this patent.

But, if there is room for doubt upon the question of the novelty of these designs, or the validity of these patents, or any of the claims, for reasons before discussed, there certainly can be no doubt that the defendants do not infringe either of these patents further than what is admitted by the answer,—that they did at one time make a few covers like that described in No. 16,040, because Exhibits B and C, which are introduced by the complainant as infringing manufactures of the defendant, do not have the border or groovings and beadings around the central panel. Both these exhibits show a central raised panel, which, I have already said, was old, and the central panel, cut by certain vertical grooves and beadings in the vicinity of each end. They do not have the horizontal grooving and beading around the central panel, dividing it into smaller panels, and making a grooved and beaded border surrounding the raised part, which both these patents call for. Defendant's case (complainant's Exhibit A) shows a raised panel with grooves and beads above and below, and diagonal cuts making groovings and beadings running across the face of the panel, but not such cuts as are described by both of complainant's patents, which require the grooves and beads to cross each other at right angles, and which so differ in appearance that they produce an entirely different effect upon the eye from what is produced by defendants' case, (complainant's Exhibit A.)

It is manifest that, if either of these patents is to be sustained, it must be, in view of the state of the art, upon the precise and special devices described in and covered by them. The test that any form which produces the same effect upon the eye of the ordinary observer as that produced by the design covered by the patent is an infringement will, if applied to the complainant's patents, defeat both of them, it seems to me, because the effect upon the eye of the complainant's patent No. 16,-039 is certainly not essentially different from that shown by the Carey-Howe cover, in evidence in this case, from the older art, and the Stewart, White, and other covers shown in the circulars in evidence here, while the Remington cover, with its Gothic top, fringed rail, main panel, and raised central panel, with groovings and beadings surrounding main panel, and the beaded corners, seems to me to be a full anticipation of

complainant's patent No. 16,040. In other words, if these old cases had been covered by design patents, there would be much more ground for maintaining a suit for infringement against complainant by the use of the designs covered by complainant's patents than there is, it seems to me, for maintaining an action against the defendants for the manufactures which are brought in evidence as alleged infringements. Being, therefore, of opinion, as already said, that patent No. 16,039, and the first and third claims of patent No. 16,040, are void as being for more than one ornament in each, and that all these claims in both patents are anticipated by the older art, and that defendants do not infringe, the bill is dismissed for want of equity.